Lyndel BOWERS, Appellant,

v.

WOODWARD & LOTHROP, a Corporation, Appellee.

No. 5751.

District of Columbia Court of Appeals.

Argued July 13, 1971.

Decided Aug. 23, 1971.

1. We are informed by counsel that Coleman pleaded guilty to certain charges and the murder charge was dropped.

Richard J. Hopkins, Washington, D. C., with whom Issac Barfield, Washington, D. C., was on the brief, for appellant.

Peter W. Tredick, Washington, D. C., for appellee.

Before KELLY, PAIR and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

This appeal is from an order of the trial court granting a motion for summary judgment in favor of the appellee, Woodward & Lothrop, plaintiff and counterdefendant below, against appellant Bowers, defendant and counterclaimant.

Appellee commenced this litigation by bringing suit against appellant, a former employee of Woodward & Lothrop, for the sum of $853.56 allegedly due on an open account. It was later stipulated that appellant was in fact indebted to appellee for the amount alleged. However, appellant's answer and his amended cross complaint demanded that the sum of $1045.70 [1] be set off against his indebtedness. Appellee's answer to the cross complaint alleged that appellant had failed to exhaust his grievance procedure as provided for in the Collective Bargain Agreement between the Union of Woodward & Lothrop Employees and appellee.

The relevant facts in the record revealed that in December of 1968 appellant was discharged from his employment with appellee as a result of an altercation with his supervisor. On December 10, 1968, appellant filed a "Request for Redress of Grievance" with his union regarding the termination of his employment, but failed to include any claim for compensation. Subsequently, as a result of his union's prompt negotiation with appellee, appellant was reinstated although in a different position and at a lesser salary, but with no loss in seniority, vacation rights, annuity rights or hospital benefits.

Appellant initially accepted the results of the negotiations as he resumed work in his new position on February 4, 1969. However, in a letter dated April 21, 1969, he asked his union to present a claim for compensation against appellee. In a reply to appellant dated May 14, 1969, the union declined to pursue his claim but advised that appellant "may" have the right in his personal capacity under the Collective Bargain Agreement to file a grievance on the denial of his claim for retroactive pay. Appellant elected not to pursue such a course of action and continued in his job until August 22, 1969 when he tendered his resignation. On November 14, 1969, appellee brought this suit for the unpaid amount due and owing for merchandise purchased by appellant from appellee's store.

Appellant raises two allegations of error. First, he submits that it was error for the trial court to grant appellee's motion for summary judgment "where there [was] evidence before the court that the employee's labor union breached its duty to represent the employee fairly in the grievance proceedings." Appellant's second contention is that the trial court should not have ruled as irrelevant to the case appellant's allegation that he was discharged in

1. Appellant claims the sum of $745.70 in back pay for the period he was allegedly wrongfully off the payroll and $300 for lost pay when he was reinstated at a reduction in salary.

violation of the Civil Rights Act. Finding no error, we affirm.

■ Federal labor policy, as enunciated by Congress and approved by the Supreme Court, requires that an aggrieved employee exhaust his contract grievance procedures prior to seeking other methods of redress. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). However, Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), sets forth an exception to the rule laid down in *Maddox*, which appellant contends is controlling in the case at bar. According to *Vaca*, an employee need not exhaust contractual remedies where the union refuses in bad faith to process an employee's grievance.

■ The record here does not establish that the union breached its duty to fairly represent appellant. In fact, the record is to the contrary as demonstrated by the union's prompt negotiations with appellee, the results achieved and appellant's acceptance of the proceedings. Further, the union's detailed letter of May 14, 1969 to appellant reveals only good faith and complete cooperation.

Since we find that the exception to the *Maddox* rule as enunciated in *Vaca* is not applicable to the instant case, there being no evidence of bad faith on the part of the union, we turn to the question of whether appellant exhausted his contract grievance procedures. The Collective Bargain Agreement, in force at the time between the union and appellee, provided in Article I:

> * * * Nothing in this agreement, however, shall be construed to prevent an individual store member from dealing directly with the Company in his own behalf, in a manner not inconsistent with this agreement or contrary to law. * *

According to Article XII:

> Grievances shall be presented within thirty days from the date of the occurrance [sic] of such alleged grievance, otherwise the Company shall be absolved from any further responsibility and shall be relieved of any duty in the premises. * * *

Section (b) (1) of that Article entitled "Store Member Grievance Procedure," further provided: "A store member may present a grievance without union participation. * * *"

■ The appellant, however, made no claim regarding compensation due him until his letter of April 21, 1969, to the union, and there is nothing in the record to indicate that he ever made a claim for compensation directly to appellee until after appellee sued him on an unpaid account. Whatever procedural rights appellant may have had to pursue a claim for compensation against appellee, he has long since waived, and as he did not exhaust his contract grievance procedures, appellee is entitled to judgment as a matter of law.

■ With regard to appellant's second contention that alleged violations of the Civil Rights Act were relevant to the proceedings below, we simply note that Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–5(a) and (f) specifically grants jurisdiction to remedy violations of the Civil Rights Act to the Equal Employment Opportunity Commission at the administrative level, and to the United States District Courts at the judicial level. Accordingly, the court below, lacking jurisdiction on this aspect of the case, correctly ruled that appellant's allegation of Civil Rights Act violations was not before it.

There being no material facts at issue in the record tending to show that the union breached its duty of fair representation to appellant, the trial court's order granting summary judgment in favor of appellee is

Affirmed.