552 A.2d 912

**Coleen M. SWEENEY**

**v.**

**The HARTZ MOUNTAIN CORPORATION.**

**No. 418, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Feb. 1, 1989.

Glen M. Fallin, Ellicott City, for appellant.

Michael S. Sundermeyer (Williams & Connolly, Aubrey M. Daniel, III and Steven R. Kuney, on the brief), Washington, D.C., for appellee.

Argued before MOYLAN, GARRITY and POLLITT, JJ.

POLLITT, Judge.

Appellant, Coleen M. Sweeney, sued appellee, The Hartz Mountain Corporation, her former employer, in the Circuit Court for Howard County.[1] Her complaint alleged discrimination on the basis of sex in the terms, conditions and privileges of her employment, including but not limited to her discharge. Count I alleged a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Count II alleged discrimination in violation of § 12.200 et seq. of the Howard County Code.

Pursuant to Maryland Rule 2–322(b), appellee moved to dismiss the claim for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can

---

1. Also named as a defendant in the case was her former supervisor, Jerry Smythe. Mr. Smythe was never served with process and the case against him was later voluntarily dismissed by the appellant.

be granted. The motion asserted "(1) that Count I must be dismissed because it sets forth a cause of action that may only be pursued in the federal courts, and (2) that Count II is barred because plaintiff failed to exhaust her administrative remedies prior to seeking relief in a court of law." [2]

After a hearing on the motion, the trial court (Kane, J.) held that Title VII claims "must be heard in federal court" and that the Howard County Human Rights Commission has primary jurisdiction over claims filed under the Howard County ordinance. The court, accordingly, granted the motion to dismiss and this appeal ensued.

Appellant presents for our consideration three issues, which she states as:

I. Whether the plain language of Sec. 12–217 of the Howard County Code permits the bringing of an action for judicial relief without exhaustion of available administrative remedies.

II. Whether by filing a charge of discrimination with the EEOC, Plaintiff met any exhaustion requirement for pursuing the judicial relief provided by Sec. 12–217 of the Howard County Code.

III. Whether a State court may exercise jurisdiction of a claim brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*

We agree with the reasoning and the holding of the circuit court and shall affirm the order granting the motion to dismiss.

### Facts

When dealing with a motion to dismiss for failure to state a claim upon which relief can be granted, as with its predecessor, the now defunct demurrer, we accept all well

---

2. Memoranda filed in support of and in opposition to the motion, and the trial court's ruling thereon, made clear that the issue raised as to Count II was the applicability of the doctrine of primary jurisdiction as opposed to the doctrine requiring the exhaustion of administrative remedies, principles which though having some similarities are not the same.

pleaded facts as true. Appellant's complaint alleged, in substance, that she began work for appellee on 13 September 1976 as a warehouse worker; that her salary and responsibilities steadily increased until 22 August 1983, during which time her performance was rated as "excellent"; that on 22 August 1983 she received another increase in salary and was promoted to supervisor; that although she had once been told she should be "more strict with her subordinates," she was given no advance notice of any problems and was not allowed to take disciplinary action against subordinates even though expected to function as a supervisor, while male and black employees in equal positions were treated differently; that on 20 July 1984 she was discharged without explanation and replaced by a black male; that she filed a charge of discrimination in employment under Title VII within 180 days of her discharge; and that on 31 December 1985 she received a "notice of right to sue."

## I

■ Appellant's first argument is that the plain language of § 12.217 of the Howard County Code authorizes the bringing of this action without first resorting to the administrative remedies provided by the Code. The specific section relied upon to support this position states:

**Sec. 12–217. Nonexclusive remedy.**

I. *Rights:* The provisions of this subtitle vest in all persons in Howard County the right to be free of any practices prohibited by this subtitle.

II. *Action at Law:* Any person who is aggrieved by an act prohibited by this subtitle may bring an action in law or in equity in the Circuit Court for Howard County to seek damages, including counsel fees, redress of injury or injunctive relief arising out of any such prohibited act.

III. *Action at Law Plus Remedies of This Subtitle.* The action in the Circuit Court for Howard County shall be in addition to pursuing the procedures and seeking the remedies set forth in this subtitle.

In addressing this argument, we must first distinguish between the doctrine of primary jurisdiction and the doctrine requiring the exhaustion of administrative remedies. That distinction was clearly drawn by Judge Levine for the Court of Appeals in *Maryland National Capital Park and Planning Commission v. Wash. Nat'l Arena*, 282 Md. 588, 386 A.2d 1216 (1978). The doctrine of primary jurisdiction is a judicially created rule designed to coordinate the allocation of functions between courts and administrative bodies. The doctrine is not concerned with subject matter jurisdiction or the competence of a court to adjudicate, but rather is predicated upon policies of judicial restraint: "which portion of the dispute-settling apparatus—the courts or the agencies—should, in the interests of judicial administration, first take the jurisdiction that both the agency and the court have." It comes into play when a court and agency have concurrent jurisdiction over the same matter, and there is no statutory provision to coordinate the work of the court with that of the agency.

Primary jurisdiction is thus not a principle that governs judicial review of administrative action and in this regard is distinguishable from the doctrine requiring the exhaustion of administrative remedies. The latter doctrine demands that a party fully pursue administrative procedures before obtaining limited judicial review and contemplates a situation in which the claim asserted is enforceable initially by administrative action *exclusively....*

In contrast, primary jurisdiction is relevant only if the claim is enforceable by *original* judicial action, that is, where the claim is initially cognizable in the courts but raises issues or relates to subject matter falling within the special expertise of an administrative agency. [citations omitted]

*Id.*, 282 Md. at 601–02, 386 A.2d at 1225–26.

The Howard County Code (Title 12—Health and Social Services, Subtitle 2—Human Rights), §§ 12–200 through 12–218, is a broad expression of public policy by The Howard County Government directed toward the elimination of

discriminatory practices within Howard County in housing, employment, law enforcement, public accommodations, financing and "[a]ny other facets of the lives of its citizens where such practices may be found to exist." § 12–200. It establishes a Human Rights Commission and an Administrator of the Howard County Office of Human Rights, charged with, among other things, investigation of complaints and enforcement of rights guaranteed by the statute. It provides for the conduct of administrative hearings and provides for appropriate action by the Commission upon a finding that a respondent has engaged in acts which violate the statute. Any party may appeal any decision or order of the Commission to the Circuit Court for Howard County.

Section 12–208 generally prohibits discrimination in employment practices because of, among other things, race or sex, "in such a way that such person(s) are adversely affected in the area of employment." It is unlawful if, because of discrimination, an employer discharges a person or acts against a person with respect to compensation or other terms and conditions of employment. § 12–208II(a). Upon a finding of a violation of the ordinance, the Commission may order, among other things, reinstatement or hiring of employees, back pay, nonmonetary relief, and any other equitable relief deemed appropriate. § 12–212IV(k). The Administrator may seek injunctive relief to preserve the status quo or to prevent irreparable harm. § 12–212VII(a).

Civil penalties of not more than $1,000 damages plus reasonable attorneys' fees, may be recovered in a civil action against a person found to have engaged in "any discriminatory act(s) in violation of this subtitle resulting in humiliation and mental anguish to the person(s) aggrieved" by such discrimination. § 12–216. Following these provisions, § 12–217 establishes the nonexclusive judicial remedy previously quoted.

It is apparent that the statute creates two remedies for the same wrong, giving the court and the agency "concurrent jurisdiction over the same matter." It is equally

apparent that the statute contains no "provision to coordinate the work of the court with that of the agency." Unquestionably, the claim "is initially cognizable in the courts but raises issues or relates to subject matter falling within the specific expertise of an administrative agency." *See Comm'n, Human Relations v. Baltimore County Savings & Loan*, 52 Md.App. 357, 365, 449 A.2d 455, 460 (1982).

In *Bd. of Ed. For Dorchester Co. v. Hubbard*, 305 Md. 774, 506 A.2d 625 (1986), the issue was whether the courts or the State Board of Education had primary jurisdiction over the question of arbitration of grievances arising from collective bargaining between teachers and the county Boards of Education. The Court held that the State Board of Education had primary jurisdiction in interpreting the public education law, and although the courts certainly had jurisdiction to entertain suits to stay or vacate arbitration, they should not exercise that jurisdiction until the parties had pursued and exhausted their administrative remedies and obtained a final decision from the State Board of Education. Conversely, in *Maryland National Capital Park & Planning Commission v. Wash. Nat'l Arena*, *supra*, the Court said the issue in the case—the construction of a lease agreement—did not require the special expertise of the Tax Court and, therefore, primary jurisdiction was properly in the circuit courts. Citing *Maryland National Capital Park & Planning Commission v. Crawford*, 307 Md. 1, 511 A.2d 1079 (1986), appellant asserts that

> *Crawford* recognizes that the doctrine of primary jurisdiction does not bar the bringing of claims that are independent of the remedies enforced by an administrative agency. In *Crawford* the question was whether an action could be brought pursuant to 42 U.S.C. 1983 without resort to the administrative remedies provided by Art. 49B of the *Maryland Code*. The *Crawford* court answered in the affirmative, because a cause of action under Sec. 1983 is independent of Art. 49B.

That may have been a question raised in the case, but it was one the Court specifically did not reach "because there was no violation of any applicable state law primary jurisdiction or exhaustion requirement." The Court held that there was a proper exhaustion of the only administrative remedy which Mrs. Crawford may have been required to follow. *Crawford, supra*, 307 Md. at 15, 511 A.2d at 1086. Furthermore, as Judge Kane observed in his "Memorandum and Order," Mrs. Crawford's claim was specifically grounded on 42 U.S.C. § 1983 and on the Maryland Constitution, and did not involve an interpretation of any law administered by the Maryland Human Relations Commission. In the case before us, the "independent" action is grounded on the very provisions of the Howard County Code administered by the Howard County Human Rights Commission. Under these circumstances, we agree with the trial court that primary jurisdiction lies with the administrative agency.

## II

■ Appellant next argues that because she filed a charge of discrimination with the Equal Employment Opportunity Commission, the federal agency designed to implement Title VII, she exhausted her administrative remedies necessary to obtain judicial relief. Appellant contends that the administrative exhaustion requirement was met because the statute, 42 U.S.C. § 2000e–5(d), requires EEOC to "notify the appropriate State or local officials, and, upon request, afford them a reasonable time, but not less than sixty days ... unless a shorter period is requested, to act under such State or local law...." Therefore, appellant concludes that she "is entitled to the presumption that the EEOC and the [Howard County] HRC fulfilled their respective responsibilities" and that in accordance with the statute EEOC either deferred the charge for 60 days or obtained the HRC's waiver. Appellant consequently infers that the HRC had investigated the discrimination charge and either waived or concluded its processing of the charge.

Appellant, however, disregards the absence in her complaint of any allegation of any charges filed with the Howard County Human Rights Commission. The only document contained in the record is the "Charge of Discrimination" filed by appellant with the EEOC. The complaint filed in the circuit court by appellant specifically stated:

16. Plaintiff filed a charge of employment discrimination under Title VII within 180 days subsequent to receiving notice of her discharge as aforesaid. On December 31, 1985, Plaintiff received a notice of right to sue.

There is no allegation of any investigation done by the HRC.

Both the Howard County Code and the federal regulations would require documentation of such actions if an investigation was made. Howard County Code § 12.212 provides specific provisions for the filing, consideration, investigation and dismissal of a discrimination complaint. The federal regulations contained in 29 CFR § 1601 et seq. also provide regulations governing EEOC's actions in relation to such a complaint. The federal regulations prescribe deferral procedures to be followed if a charge of discrimination is filed with the EEOC and there is a "706 Agency" [3] with subject matter jurisdiction over the charges, such as the HRC here. According to these procedures, "[t]he person claiming to be aggrieved ... shall be notified, *in writing*, that the document which he or she sent to the Commission has been forwarded to the [706 Agency]...." (emphasis added) There is no such document alleged in the complaint in this case. In addition, her complaint contains no allegations of the HRC's dismissal, investigation or determination of the complaint. Section 12.212(III)(b)(2) regarding the dismissal of the complaint states:

---

**3.** A "706 Agency" is "a State or local agency which the Commission has determined satisfies the criteria stated in section 706(c) of Title VII." 29 CFR § 1601.3(a). The Howard County (Md.) Human Rights Commission has been granted this type of "designated agency" status. 29 CFR § 1601.74.

(2) If the complaint is dismissed, the *administrator shall send a dismissal letter by certified mail* to the complainant stating the fact of dismissal, the reasons for dismissal and the process for the complainant to seek reconsideration of the administrator's decision by the human rights commission. *The administrator shall send a copy of the dismissal letter by certified mail to the respondent.* [emphasis added]

Section 12.212(III)(d) likewise requires the administrator to "issue written findings of the results of the investigation ..." and "[t]he findings shall: ... *[b]e sent by certified mail to all parties."* (emphasis added) Certainly if the HRC had made such a determination some documentation would have been available for attachment to the complaint. We fail to see how we can assume all these things happened when they were not even alleged.

### III

■ Finally, appellant asserts that state and federal courts have concurrent jurisdiction over Title VII claims; therefore the trial court erred in dismissing Count I for lack of jurisdiction.

It appears that neither the Supreme Court nor our own Court of Appeals has decided this question.[4] In support of her argument, appellant primarily relies on *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981), where the Supreme Court held that

---

4. *See Maryland National Capital Park & Planning Commission v. Crawford, supra,* 307 Md. at 19, 511 A.2d at 1088, n. 8, where the Court of Appeals noted:

It may be that Congress intended Federal courts to exercise exclusive jurisdiction over Title VII claims. The United States Court of Appeals for the Ninth Circuit recently took this view, *Valenzuela v. Kraft, Inc.,* 739 F.2d 434, 435–436 (9th Cir.1984), but the Supreme Court has not decided the point, *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 479 n. 20, 102 S.Ct. 1883, 1896 n. 20, 72 L.Ed.2d 262 (1982), and other courts have taken the position that Congress intended that federal and state courts share concurrent jurisdiction. *See Valenzuela v. Kraft, Inc., supra,* 739 F.2d at 435 n. 1 (collecting and comparing cases).

federal courts do not have exclusive jurisdiction over personal injury and indemnity cases arising under the Outer Continental Shelf Lands Act. As appellant correctly asserts, the Supreme Court acknowledged that "state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication," *Id.* at 477–78, 101 S.Ct. at 2875, and they continued, such action "facilitates the enforcement of federal rights." *Id.* at 478 n. 4, 101 S.Ct. at 2875 n. 4. The Court followed by stating that where there is a presumption of concurrent jurisdiction, however, Congress may explicitly or implicitly confine jurisdiction to the federal courts.

Thus, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests.

*Id.* at 478, 101 S.Ct. at 2875.

Appellant argues there has been no rebuttal of this presumption through any of these means, therefore concurrent jurisdiction is allowable. Appellant fails to recognize that the Supreme Court specifically noted that the issue in *Gulf Offshore Co., supra,* involved "state-court jurisdiction over actions based on incorporated state law" and no opinion was expressed regarding concurrent jurisdiction over substantive provisions of the federal law in question. *Gulf Offshore Co., supra,* 453 U.S. at 479 n. 7, 101 S.Ct. at 2876 n. 7. The case before us does not involve incorporated state law, but rather, the interpretation of substantive federal law pursuant to Title VII.

The leading case holding that federal courts possess exclusive jurisdiction over Title VII actions, *Valenzuela v. Kraft, Inc.,* 739 F.2d 434 (9th Cir.1984) based its decision, primarily, on the language of *Gulf Offshore Co.,* obviously not agreeing with appellant's interpretation of that holding. While recognizing that the provision in Title VII which

grants federal courts jurisdiction does not expressly state such jurisdiction shall be exclusive, the court said:

> Other provisions of Title VII, however, do contain the requisite "unmistakable implication" of exclusive federal jurisdiction. Section 706(j), 42 U.S.C. § 2000e–5(j) (1976), provides that *"[a]ny civil action* brought under this section ... *shall be* subject to appeal as provided in sections 1291 and 1292, Title 28." (Emphasis added.) Sections 1291 and 1292 of Title 28 govern the jurisdiction of United States Courts of Appeal. Congress could not have intended that actions brought in state court be appealed to the federal circuit courts. Thus section 706(i) unmistakably implies that Congress intended to vest exclusive jurisdiction in the federal courts.
>
> Section 706(f)(2), 42 U.S.C. § 2000e–5(f)(2) (1976), provides that "[a]ny temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with rule 65 of the Federal Rules of Civil Procedure." Section 706(f)(2) further provides that "[i]t shall be the duty of a court having jurisdiction over proceedings under this section to assign cases for hearing at the earliest practicable date and to cause such cases to be in every way expedited." Whether Congress has the constitutional power to require state courts to follow Fed.R.Civ.P. 65 and to expedite certain cases is a matter of some doubt. P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *Hart and Wechsler's The Federal Courts and the Federal System* 571–72 (2d ed.1973). In any event, we do not believe that Congress attempted in Title VII to regulate the procedures and priorities of the state courts. Therefore, section 706(f)(2) also unmistakably implies that Congress intended exclusive federal jurisdiction.

*Valenzuela,* 739 F.2d at 435–36.

The court further found that the legislative history supports exclusive federal jurisdiction, and, finally, cited Supreme Court precedent supporting exclusive federal jurisdiction.

In *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974), the Court enumerated the forums available to a victim of discrimination under Title VII. The Court named the Equal Employment Opportunity Commission, state and local agencies, and the federal courts. Significantly the Supreme Court made no mention of state courts. In *Lehman v. Nakshian*, 453 U.S. 156, 164 n. 12, 101 S.Ct. 2698, 2703 n. 12, 69 L.Ed.2d 548 (1981), the Court stated that exclusive federal jurisdiction in suits brought under section 15 of the Age Discrimination in Employment Act, 29 U.S.C. § 633a (1982), "is consistent with the jurisdictional references in Title VII of the Civil Rights Act of 1964."

*Id.* at 436.

In *Bradshaw v. General Motors Corp, Fisher Body Div.*, 805 F.2d 110 (3d Cir.1986) the court, without discussion, flatly stated "Title VII of the Civil Rights Act of 1964 vests exclusive jurisdiction in the federal courts, 42 U.S.C. § 2000e–5(f)(3)." *Id.* at 112. Other cases so holding, citing *Valenzuela*, include *Jones v. Intermountain Power Project*, 794 F.2d 546 (10th Cir.1986) and *Glezos v. Amalfi Ristorante Italiano, Inc.*, 651 F.Supp. 1271 (D.Md.1987). Courts applying the *Valenzuela* rationale to other federal statutes include *Rustom v. Atlantic Richfield Co.*, 618 F.Supp. 210 (D.C.Cal.1985 (Petroleum Marketing Practices Act), and *Kinsey v. Nestor Exploration Ltd.–1981A*, 604 F.Supp. 1365 (E.D.Wash.1985) (Racketeer Influenced and Corrupt Organizations Act).

We are aware of authority to the contrary. *Greene v. Cty. Sch. Bd. of Henrico Cty., Va.*, 524 F.Supp. 43 (E.D.Va. 1981), and *Bennun v. Board of Governors of Rutgers, Etc.*, 413 F.Supp. 1274 (D.N.J.1976), both held that State courts have concurrent jurisdiction to entertain Title VII claims. We have examined those cases, but we find the rationale of *Valenzuela* and its progeny more persuasive. We think the circuit court properly dismissed Count I for lack of subject matter jurisdiction.

JUDGMENT AFFIRMED; APPELLANT TO PAY COSTS.