991 F.2d 787
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Joan DIXON, Plaintiff-Appellant,
v.
SSA BALTIMORE FEDERAL CREDIT UNION, Defendant-Appellee.
 No. 92-1489.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 1, 1992.
Decided April 19, 1993.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore (CA-91-170-L), Benson E. Legg, District Judge.
 Phillips P. O'Shaughnessy, Sandbower, Gabler & O'Shaughnessy, Baltimore, MD, argued.
 Francis Joseph Nealon, Ballard, Spahr, Andrews & Ingersoll, argued.
 Pamela F. Lewis, Barnett Q. Brooks, Linthicum, MD, on brief), for plaintiff-appellant.
 Marianne P. Eby, Amy S. Owen, Ballard, Spahr, Andrews & Ingersoll, Washington, DC, on brief), for defendant-appellee.
 D.Md.
 AFFIRMED.
 Before RUSSELL, WILKINSON, and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Joan Dixon's employment as a credit union branch manager was terminated on March 15, 1984, by her employer, SSA Baltimore Federal Credit Union. The credit union gave as its reason its belief that Dixon had falsified her time records. Dixon contends that she was terminated because she is black.
 
 
 2
 In June 1984, Dixon filed a race discrimination claim against the credit union with the Maryland Commission on Human Relations (MCHR) and the Equal Employment Opportunity Commission. While her claim was still pending before the MCHR, she filed a civil action in the state court against the credit union in Baltimore, Maryland, alleging various common law contract and tort claims, including a claim for negligent investigation and negligent hiring of the employee who conducted the investigation. As part of that suit, she alleged that she had been treated "differently from employees similarly situated who had been disciplined or terminated," and that her privacy had improperly been violated by the employer's publication of the fact that she had filed a charge with the MCHR. On motions for summary judgment, the state judge concluded, inter alia, that no evidence had been presented "on the question of disparate treatment" and entered a judgment in favor of the credit union on all counts. The judgment was affirmed on appeal.
 
 
 3
 Several years later, Dixon filed this action alleging that the credit union's termination of her employment constituted disparate treatment on account of race and therefore violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. On cross-motions for summary judgment, the district court entered judgment in favor of the credit union, concluding that the suit was foreclosed by the state judgment entered against Dixon in connection with the same transaction. The court observed:
 
 
 4
 In both the state and federal actions Dixon seeks to hold the Credit Union liable for the same conduct involving her termination as an employee. Both suits challenge the circumstances of Dixon's termination. Although the state court action proceeded under tort and contract theories, the complaint filed in federal court alleges the same basic facts, arising out of the same transaction, in support of Dixon's Title VII claim. Finally, implicit in all of her state law claims is the same charge of racial animus that underlies Dixon's Title VII claim.
 
 
 5
 Dixon v. SSA Baltimore Federal Credit Union, No. L-91-170, slip op. at 6 (D.Md. Mar. 31, 1992). Agreeing with the district court, we affirm.
 
 
 6
 Whether a Title VII action is precluded by a judgment in an earlier state proceeding is determined by reference to state law, see Kremer v. Chemical Construction Corp., 456 U.S. 461, 466 (1982), so that a judgment entered against Dixon in a Maryland state court has the same preclusive effect in the federal court as it would in a state court. Under Maryland law:
 
 
 7
 [A] judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit, where the court had jurisdiction....
 
 
 8
 Alvey v. Alvey, 225 Md. 386, 390 (1961) (emphasis added). In determining whether the subsequent suit is based on the same cause of action as that in the earlier suit, Maryland courts use the analysis elaborated in section 24 of the Restatement (Second) of Judgments by focusing on whether both suits arise out of the same "transaction." See Rowland v. Harrison, 320 Md. 223, 230 n. 2 (1990); Kent County Bd. of Educ. v. Bilbrough, 309 Md. 487, 498-99 (1987).
 
 
 9
 In this case there can be no question but that Dixon's two suits were based on the same transaction--her discharge from employment on March 15, 1984. In the state case, Dixon maintained that her termination was tortious and breached her employment contract because, inter alia, "[d]efendants treated Plaintiff differently from employees similarly situated". In this case Dixon alleges that the same termination violated Title VII because she was treated differently from similarly situated employees who were white. The fact that Dixon's present claim is brought under a different legal theory does not justify the second effort. See Bilbrough, 309 Md. at 500 (1987); Cf. Snell v. Mayor and City Council of Havre de Grace, 837 F.2d 173, 177 (4th Cir.1988) (finding federal civil rights claims barred by res judicata effect of Maryland state court decision of related tort and contract claims).
 
 
 10
 Dixon argues that even if her federal claim arises out of the same transaction as did her state claim, she should nonetheless be allowed to assert the federal claim because she could not have filed her Title VII action in state court. She notes that under Maryland law the subsequent claim is barred only if it could have been brought with the initial one. See Alvey, 225 Md. at 390. Thus, if she could not have brought her Title VII claim in the state court, she argues, her federal case would not now be barred. See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 379-82 (1985) ("If state preclusion law includes [a] requirement of prior jurisdictional competency, which is generally true, a state judgment will not have preclusive effect on a cause of action within the exclusive jurisdiction of the federal courts.")
 
 
 11
 While it has since become clear that state courts do possess jurisdiction over Title VII claims, see Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820, 821 (1990), at the time Dixon filed her state claim the federal courts were split on the question of whether jurisdiction over Title VII claims was exclusively federal or was concurrent. Compare Greene v. County School Bd., 524 F.Supp. 43, 45 (E.D.Va.1981) (concurrent jurisdiction) with Valenzuela v. Kraft, Inc., 739 F.2d 434, 436 (9th Cir.1984) (exclusive federal jurisdiction); see also Glezos v. Amalfi Ristorante Italiano, Inc. 651 F.Supp. 1271, 1277 (D.Md.1987) (exercising pendent jurisdiction "[b]ecause Title VII claims can be filed only in federal court," citing Valenzuela ). Most important, however, is the fact that the Court of Appeals of Maryland had not yet decided whether Maryland state courts had jurisdiction over such cases when Dixon brought her state claim.* See Sweeney v. Hartz Mountain Corp., 78 Md.App. 79, 88 (1989). She therefore cannot contend that she could not have filed a Title VII claim in state court.
 
 
 12
 In the circumstances we do not believe the district court erred in dismissing her claim.
 
 
 13
 AFFIRMED.
 
 
 
 *
 It is worthy of note that, at the time, even Dixon apparently thought she could file her Title VII claim in state court and elected not to do so only for strategic reasons. As she argued in papers before the district court, "[plaintiff] was entitled to elect as she did to prosecute her discrimination claim in either state or federal court.... She chose the federal forum." She initially stated a similar position in a letter to the district judge, from which the later attempted to distance herself. See Appellee Brief at 13 n. 9